UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lloyd Hartleib,                                     Civil No. 15-3357 (ADM/FLN)

      Plaintiff,

   v.                                         **REPORT AND RECOMMENDATION**

Blake Carey et al.,

      Defendants.

David Goodwin for Plaintiff.
Jeffrey Weber for Defendants.

**THIS MATTER** came before the undersigned United States Magistrate Judge on July 27, 2016 on Defendants' motion to dismiss (ECF No. 40). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Based upon all of the records, files, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion to dismiss (ECF No. 40) be **GRANTED**.

## I. FINDINGS OF FACT

Plaintiff Lloyd Hartleib is a civilly committed detainee at the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. Pl.'s Opp'n Mem., ECF No. 50. He filed this 42 U.S.C. § 1983 action alleging that MSOP employees Blake Carey, Paul Mayfield, Heidi Menard, Stephanie Saxe, Jordan Goodman, Lori Aldrin, Cindy Churro [sic], Randal Gordon, Nathan Johnson, Sara Kulas, Kevin Moser, and Joseph Miller[1] (hereinafter "Defendants") were deliberately

---

[1] Joseph Miller is not represented by counsel in this matter. The Court assumes without deciding that Joseph Miller has been properly served for the purposes of addressing the merits of Defendants' motion and considers the case against Joseph Miller to be governed by the same analysis even though he is not a named party in

indifferent to his safety when they did not take steps to protect him from an assault by his cellmate after his repeated expressed and documented concerns. Am. Compl., ECF No. 34. Hartleib complained to Defendant Mayfield on April 9, 2015 and April 14, 2015, that his cellmate was using drugs and alcohol. ECF No. 34 ¶¶ 25, 27. On April 19, 2015, Hartleib passed a note to Defendant Churro to inform her that his cellmate would start drinking at 1:30 and asked that she "[d]o not do nothing right away but just watch him closely. I am giving you this information because I am sick of it all." *Id.* ¶ 28. He again reported that his cellmate was intoxicated on April 23, 2015 and submitted a Client Request Form on May 20, 2015 to Defendants Carey, Menard, and Mayfield asking to be moved and placed without a cellmate. *Id.* ¶ 31. Hartleib alleges that despite his numerous complaints, Defendants did not investigate any of his claims or search his cellmate for contraband. ECF No. 50 at 3; ECF No. 34 ¶ 28.

On May 24, 2015, Hartleib's cellmate punched him in his face while he was laying down in his bed. ECF No. 34 ¶ 32. When asked what happened, Hartleib and his cellmate reported to Defendants that Hartleib had tripped and fallen, and they both denied that they had an altercation. *Id.* ¶ 33.

On May 28, 2015, Hartleib admitted to Defendant Carey that his cellmate had punched him and was bragging to other MSOP detainees about it. *Id.* ¶ 35. Defendant Carey reported this immediately to the "officer of the day," and Hartleib's cellmate was moved to a different cell. Geil Aff. Ex. B, ECF No. 43.

On May 29, 2015, Hartleib asked Defendant Kulas to take a picture of his swollen black eye, but she denied his request. *Id.* at ¶ 39.

---

Defendants' motion to dismiss. *See* Defs.' Mem. in Supp. of Mot. 1 n.2, ECF No. 42.

Hartleib argues that he suffered emotional trauma in addition to his swollen eye and has anxiety living with other people. *Id.* at ¶ 40. On February 15, 2016, Hartleib filed a Client Room Change Request Form which Defendants Saxe and Mullen denied. *Id.*¶ 24. This request involved a different cellmate, as Hartleib has never been made to live with the person who assaulted him on May 24, 2015. ECF No. 50 at 6.

Hartleib alleges that Defendants (1) were deliberately indifferent to his clearly established constitutional right to be free from any risk to his health and safety in violation of the Eighth Amendment's prohibition on cruel and unusual punishment; (2) failed to train or supervise other Defendants and MSOP staff; and (3) engaged in an unconstitutional custom or practice. ECF No. 34 ¶¶ 43, 47, 50–52. Defendants now seek to dismiss Hartleib's Amended Complaint in its entirety. Mot. to Dismiss, ECF No. 40.

## II. STANDARD OF REVIEW

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

### III. CONCLUSIONS OF LAW

**A.     Deliberate Indifference**

The Eighth Amendment protects against cruel and unusual punishment. U.S. Const. amend VIII. The Eighth Amendment, however, does not apply to those who are civilly committed. *Semler v. Ludeman*, No. CIV 09-0732, 2010 WL 145275, at *22 (D. Minn. Jan. 8, 2010) ("Because an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply."); *see also Rousseau v. Casteneda*, 08-CV-236 (DSD/JSM), 2008 WL 920448, at *2 (D. Minn. Apr. 3, 2008) (holding that the Eighth Amendment does not apply to civilly committed persons at the MSOP Moose Lake facility). Hartleib, who is civilly committed at MSOP, does not have clearly established Constitutional rights under the Eighth Amendment.

However, Hartlieb has a clearly established constitutional right to be free from any risk to his health and safety under the Fourteenth Amendment. *Youngberg v. Romeo*, 457 U.S. 307, 315, 321–22 (1982). The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend

XIV. Substantive due process protections under the Fourteenth Amendment include the right to bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (citing *Planned Parenthood v. Casey*, 505 U.S. 833, 847–49 (1992)). "The integrity of the individual person is a cherished value of our society." *Schmerber v. California*, 384 U.S. 757, 772 (1966); *see also In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 810–11 (S.D. Ohio 1995) ("The right to be free of state-sponsored invasion of a person's bodily integrity is protected by the Fourteenth Amendment guarantee of due process."). In *Rousseau*, the Eighth Circuit recognized that the due process clause of the Fourteenth Amendment provides protections to civilly committed patients. *Rousseau*, 2008 WL 920448, at *2.

As acknowledged by Hartleib in his opposition memorandum, "To successfully plead deliberate indifference, a plaintiff must show that: (1) objectively, a substantial risk to safety existed, and (2) that, subjectively, the defendants knew of but disregarded the substantial risk to health or safety." ECF No. 50 at 7–8 (citing *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011)).

The Court assumes without deciding that Hartleib has sufficiently plead that objectively, a substantial risk to his safety existed. Hartleib complained about his cellmate's substance abuse on at least four occasions in April 2015. However, Hartleib never told any of the Defendants that he felt his own safety was at risk. Hartleib has not pled any facts to show that his cellmate had a history of violence or engaged in threatening conduct to raise a reasonable inference of a substantial threat of violence against him. He also not alleged that his concern about his cellmate's drug abuse was based on a fear of being attacked or having a violent altercation with this cellmate. Therefore, Hartleib's Complaint fails to properly alleges that Defendants knew of but disregarded a substantial risk to his health or safety. *See Berry v. Sherman*, 365 F.3d 531, 634–35 (8th Cir. 2004) (considering a plaintiff's failure to express fear or to accept an offer of protective custody as some evidence that

5

a substantial risk of serious harm did not exist). Furthermore, as soon as Defendant Carey learned that Hartleib's cellmate attacked him, he issued an incident report and ensured that Hartleib's cellmate was moved. ECF No. 34 ¶¶ 35–36. Hartleib has not pled facts sufficient to allege Defendants knew of but disregarded a substantial risk to his health or safety and therefore that his Fourteenth Amendment rights were violated. Hartleib's deliberate indifference claim must be dismissed in its entirety.

### B. Failure to Supervise or Train

Government officials in a supervisory role may be liable under Section 1983 for failing to properly train or supervise where (1) the official received notice of a pattern of unconstitutional acts committed by its employees, and (2) was deliberately indifferent to such a pattern. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). Hartleib alleges that he was assaulted by his cellmate one time on May 24, 2015. This does not amount to a pattern of unconstitutional acts committed by MSOP employees. Furthermore, because the Court has already concluded that Hartleib has not sufficiently pled that Defendants were deliberately indifferent, Hartleib cannot make the requisite showing that any supervisory Defendants should be held liable for failure to supervise or train. The claim must be dismissed.

### C. Unconstitutional Custom or Practice

To survive a motion to dismiss on his unconstitutional custom or practice claim, Hartleib must allege (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by MSOP employees; (2) deliberate indifference, to or tacit authorization of, such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that this practice caused a violation of his constitutional rights. For the reasons

discussed above, the Court concludes that Hartleib has not pled facts sufficient to allege that there was a pattern of unconstitutional misconduct. Indeed, the Court concludes that Hartleib has not asserted that Defendants were deliberately indifferent to a risk to his health and safety or violated his Fourteenth Amendment rights. Therefore, this claim must also be dismissed.

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion to dismiss (ECF No. 40) be **GRANTED** and the case against all Defendants be **DISMISSED with prejudice**.

DATED: August 19, 2016                                     *s/Franklin L. Noel*
                                                                                        FRANKLIN L. NOEL
                                                                                        United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.