UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lloyd A. Hartleib,

       Plaintiff,

v.

Blake Carey, Paul Mayfield, Heidi Menard,
Stephanie Saxe, Joseph Miller, Jordan
Goodman, Lori Aldrin, Cindy Churro,
Randal Gordon, Nathan Johnson, Sara
Kulas, and Kevin Moser,

       Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 15-3357 ADM/FLN

___

David A. Goodwin, Esq. and Daniel E. Gustafson, Esq., Gustafson Gluek PLLC, Minneapolis, MN, on behalf of Lloyd Hartleib.

Jeffrey Weber, Esq., Assistant Minnesota Attorney General, St. Paul, MN, on behalf of Defendants Blake Carey, Paul Mayfield, Heidi Menard, Stephanie Saxe, Jordan Goodman, Lori Aldrin, Cindy Churro, Randal Gordon, Nathan Johnson, Sara Kulas, and Kevin Moser.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff Lloyd A. Hartleib's ("Hartleib") Objections [Docket No. 54] to Magistrate Judge Franklin L. Noel's August 22, 2016 Report and Recommendation [Docket No. 53] ("R&R"). In the R&R, Judge Noel recommends granting Defendants Blake Carey, Paul Mayfield, Heidi Menard, Stephanie Saxe, Jordan Goodman, Lori Aldrin, Cindy Churro, Randal Gordon, Nathan Johnson, Sara Kulas, and Kevin Moser's (collectively, "Defendants") Motion to Dismiss [Docket No. 40].[1] After a de novo review of the record, and for the reasons stated below, Hartleib's

___

[1] Defendant Joseph Miller is not represented by counsel in this matter and is not a named party in Defendants' Motion to Dismiss. See Defs.' Mem. Supp. Mot. Dism. [Docket No. 42] at

Objections are overruled and the R&R is adopted.

## II. BACKGROUND

Hartleib is a civilly committed involuntary detainee in the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. Am. Compl. [Docket No. 34] ¶ 6. Defendants are employees at the Moose Lake MSOP facility. Id. ¶¶ 7–18. Hartleib filed this action under 42 U.S.C. § 1983 after allegedly being physically assaulted by his roommate, who is also an MSOP detainee in Moose Lake. See generally Am. Comp.

The Amended Complaint asserts the assault occurred the night of May 24, 2015, when Hartleib's roommate was under the influence of drugs or alcohol. Id. ¶ 32. The roommate jumped on Hartleib while he was in his bed and punched him, giving him a swollen black eye. Id. The day after the assault, Hartleib approached the staff desk and informed the staff that he had tripped and fallen in his room during the night. Id. ¶ 33. He denied that there had been a physical altercation with his roommate. Id. On May 28, 2015, four days after the assault, Hartleib informed Defendant Carey that his roommate was the person who had hit him in the eye. Id. ¶ 35. Hartleib stated that he was reporting the assault because his roommate had been "bragging to his peers about it," and his friends "were making comments about him being hit." Id. ¶ 35.

Hartleib has brought three claims: failure to protect (Count I); failure to train and supervise (Count II); and unconstitutional custom or practice (Count III). Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Judge Noel

---

1 n.2. In the R&R, Judge Noel considered the case against Miller to be governed by the same analysis even though he is not a party to the Motion to Dismiss. R&R at 1 n.1. Plaintiff has not objected to this aspect of the R&R.

granted the motion as to all counts and dismissed the case with prejudice.  R&R at 4–7.

Hartleib objects to the dismissal of the failure to protect claim (Count I).  Judge Noel determined that dismissal of this claim was appropriate because Hartleib had not alleged sufficient facts to show that Defendants knew of and disregarded the risk he faced from his roommate.  R&R at 5–6.

Hartleib argues that the Amended Complaint alleges facts showing that he repeatedly raised concerns about his roommate's drug and alcohol use and Hartleib's fear of being labeled a snitch.  Hartleib contends that these allegations clearly demonstrate Defendants' knowledge of, and disregard for, the risks he faced from his roommate.

Specifically, the Amended Complaint alleges that on April 9, 2015, Hartleib informed Defendant Mayfield that his roommate was using drugs and pushing Hartleib to participate in "criminal activity."  Am. Compl. ¶ 25.  Hartleib stated that his roommate is a "good guy" but is "too mixed up in stuff."  Id.  Hartleib also told Mayfield that he (Hartleib) was concerned about being labeled a snitch by his peers, and that he would begin looking for a new roommate.  Id.  On April 14, 2015, Hartleib told Mayfield that his roommate was crushing and snorting contraband pills and refused to stop.  Id. ¶ 27.  On April 19, 2015, Hartleib approached a staff desk and gave Defendant Churro a hand written note that his roommate "will start drinking at 1:30."  Id. ¶ 28.  The note stated that Hartleib had been blamed for stealing his roommate's food, so he asked that Churro "not do nothing right away but just watch him closely.  I am giving you this information because I am sick of it all."  Id.  On April 23, Hartleib again reported that his roommate was "messed up," meaning he was "intoxicated in some way."  Id. ¶ 29.  On May 20, 2015, Hartleib submitted a Client Request Form to Defendants Carey, Menard, and Mayfield

expressing that he wanted "[n]o roommate." Id. ¶ 31.

Hartleib contends that these allegations sufficiently allege that Defendants had subjective knowledge of the risk to Hartleib posed by his roommate, because being locked in a cell at night with an intoxicated sex offender and being labeled a snitch in the prison-like environment of MSOP were obvious risks to his safety.

Hartleib also argues that if this Court adopts the R&R, he should be given the opportunity to file a Second Amended Complaint because he has now learned that on at least two occasions in recent years, his assailant was transferred from MSOP due to assaultive behavior and use of drugs and alcohol. Obj. at 2.

### III.  DISCUSSION

In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

**A. Hartleib's Objection**

The Fourteenth Amendment's guarantee of substantive due process includes the right to be free from a serious risk of harm. Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006). "To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a . . . detainee such as [Hartleib] must show the defendant official was deliberately indifferent to his rights." Walton v. Dawson, 752 F.3d 1109, 1117 (8th Cir. 2014). Establishing deliberate indifference requires a plaintiff to show that: (1) objectively, a substantial risk to the detainee's safety

existed, and (2) subjectively, the defendants knew of but disregarded the substantial risk to the detainee's safety. Reynolds v. Dormire, 636 F.3d 976, 979 (8th Cir. 2011).

The Court agrees with Judge Noel's conclusion that the second prong of the deliberate indifference test is not satisfied because the Amended Complaint fails to adequately allege that Defendants knew of but disregarded a substantial risk to Hartleib's safety. In his many communications with Defendants, Hartleib never identified that his concern about his roommate's drug use was his fear of being attacked or threats to his safety. Rather, Hartleib told the staff that his roommate was a "good guy," but that he was "too mixed up into stuff," and thus Hartleib intended to look for a new roommate. Am. Compl. ¶ 25. In later reports, Hartleib expressly told the staff not to "do anything right away" and that he was reporting his roommate's substance use "because I am sick of it all." Id. ¶ 28. Even after the assault, Hartleib waited four days before reporting the incident. Id. ¶ 35. He then stated the reason for his deciding to report the assault was that his roommate had been "bragging" about hitting him, not because he feared for his safety. Id. ¶ 35. Because Hartleib never informed Defendants that he feared for his safety, the Amended Complaint fails to plausibly allege that Defendants knew of and disregarded the risk to Hartleib. See Holden v. Hirner, 663 F.3d 336, 341 (8th Cir. 2011) (affirming dismissal of claim for failure to protect where prisoner "had not told any of the prison officials he felt threatened").

Even if Hartleib's stated fear of being labeled a snitch could be construed as concern for his safety, the circumstances alleged in the Amended Complaint do not allow for an inference that MSOP officials had reason to know that Hartleib faced a substantial risk of serious harm. More than a month passed from the time Hartleib communicated his concern about being labeled

a snitch until the assault occurred.  During the time that elapsed, Hartleib and his roommate lived together without incident.  This month-long passage of time was sufficiently long enough for MSOP officials to believe that Hartleib was not actually in danger.  See Prater v. Dahm, 89 F.3d 538, 542 (8th Cir. 1996) (holding that prison officials lacked knowledge of substantial risk to plaintiff despite knowing that plaintiff had been threatened by another inmate, because plaintiff and the other inmate had been incarcerated together without incident for two weeks, which "was in itself a sufficient time for prison officials to believe that [plaintiff] was not, in fact, in danger").

Although Hartleib argues that being locked in a cell with an intoxicated roommate each night poses an obvious threat, he has cited no case law to support the assertion that an intoxicated roommate, without more, poses a specific risk of harm.  Cf. Estate of Hocker by Hocker v. Walsh, 22 F.3d 995, 1000 (10th Cir. 1994) (holding that "intoxication with its accompanying incoherence does not, by itself, give the Detention Center staff knowledge that [the detainee] posed a specific risk of suicide").  For the above reasons, the R&R's dismissal of Count I was not erroneous.  Hartleib's Objection is overruled and the R&R is adopted in its entirety.

**B.  Request to File Second Amended Complaint**

Harlteib argues that if the R&R is adopted, he should be permitted to file a Second Amended Complaint because he "has come to learn that on at least two occasions in recent years, his cellmate-assailant had been taken from MSOP to Department of Corrections custody for assault and use of contraband drugs or alcohol."  Obj. at 10.  Hartleib contends that this information would have put Defendants on notice of his roommate's history of violence to

warrant a finding of deliberate indifference.

Hartleib's request for leave to amend is denied for at least two reasons. First, the request is procedurally improper because a plaintiff may not amend his complaint through a memorandum or brief. See Thomas v. United Steelworkers Local 1938, 743 F.3d 1134, 1140 (8th Cir. 2014) (finding circuit opinions that disallow amendments through a brief to be persuasive and holding that plaintiff must follow Federal Rule of Civil Procedure 15 to amend his complaint). Hartleib has failed to comply with Local Rule 15.1(b), which requires that a motion to amend a pleading include "a copy of the proposed amended pleading" and "a version of the proposed amended pleading that shows . . . how the proposed amended pleading differs from the operative pleading." Thus, denial of leave to amend is appropriate. See Ellis v. City of Minneapolis, 518 F. App'x 502, 504-05 (8th Cir. 2013) ("[A] district court does not abuse its discretion in denying leave to amend when the party seeking leave has failed to follow procedural rules or failed to attach the proposed complaint.").

Second, Hartleib's vague assertions of "at least two" instances of assaultive behavior by his roommate over the past years do not amount to a plausible claim that any Defendant knew of and disregarded a specific risk to Hartleib's safety. "An inmate's history of violence alone is insufficient to impute to prison officials subjective knowledge of the inmate's danger to harm other inmates." Holden, 663 F.3d at 341; see also Falls v. Nesbitt, 966 F.2d 375, 378 (8th Cir. 1992) (stating that a pervasive risk of harm "may not ordinarily be shown by pointing to a single incident or isolated incidents"). Thus, allowing Hartleib to amend the Amended Complaint to include these allegations would be futile.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Lloyd A. Hartleib's Objections [Docket No. 54] to Magistrate Judge Franklin L. Noel's August 22, 2016 Report and Recommendation [Docket No. 53] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 53] is **ADOPTED**;

3. Defendants Blake Carey, Paul Mayfield, Heidi Menard, Stephanie Saxe, Jordan Goodman, Lori Aldrin, Cindy Churro, Randal Gordon, Nathan Johnson, Sara Kulas, and Kevin Moser's Motion to Dismiss [Docket No. 40] is **GRANTED**; and

4. The case against all Defendants is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 15, 2016.